## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

## EASTERN DIVISION

Oluwakemi Adewol, on behalf of

herself and all others similarly situated,

|  |  |
|---|---|
| Plaintiff, | CASE NO.   **4:22-cv-00254** |
| v. |  |
|  | **JURY TRIAL** |
| Frickenschmidt Foods LLC, | **DEMANDED** |
| Defendant. |  |

## CLASS ACTION COMPLAINT

Plaintiff Oluwakemi Adewol brings this action on behalf of herself and all others similarly situated against Defendant Frickenschmidt Foods LLC. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      In an attempt to capitalize on consumer demand for health-focused and "gluten free" foods, Defendant sells its Wicked Cutz products throughout the United States. However, as Defendant knows, its "gluten free" products actually contain gluten. Thus, the statement on Defendant's products' labels claiming that the products are "gluten free" is false, misleading, and designed to deceive consumers into paying a price premium and choosing Defendant's products over a competitor's product.

2.      This action seeks to remedy the deceptive and misleading business practices of Defendant with respect to its marketing and sales of the following its Wicked Cutz Teriyaki Beef Stick (hereinafter "Product" or "Products") throughout the United States of America.

3.      Building upon this deception by labeling and advertising the Products as "gluten free," Defendant creates the impression amongst reasonable consumers that the Products contain no gluten. However, this is not true, and Defendant fails to adequately inform consumers that the Products contain gluten.

4.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Gluten Free" when purchasing the Products.

5.      These deceptive representations appear prominently on the Products' label. For example, on the principal display panel of all of Defendant's Products, "Gluten Free" is featured prominently.



6.      Plaintiff and Class Members paid for the Products over and above comparable products that did not purport to be "Gluten Free." Given that Plaintiff and Class Members paid for the Products based on Defendant's misrepresentations that they are "Gluten Free," Plaintiff and Class Members suffered an injury in the amount paid.

7.      Additionally, Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Gluten Free." Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "Gluten Free," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

8.      Defendant's conduct violated and continues to violate, *inter alia*, the consumer protection statutes of many states including the Missouri Merchandising Practices Act and the Maryland Consumer Protection Act. Defendant breached and continues to breach its express and implied warranties regarding the Products. Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Defendant. Defendant is a Missouri limited liability company with its principle place of business located in the

State of Missouri. Further, Defendant purposefully avails itself of the Missouri consumer market and distributes the Products to many locations within this County and hundreds of retail locations throughout the State of Missouri, where the Products are purchased by hundreds of consumers every day.

10.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

11.     Venue is proper in this District under 28 U.S.C. § 1391. Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District.

## PARTIES

12.     Plaintiff is a citizen of Maryland.

13.     Defendant Frickenschmidt Foods LLC is a Missouri company with its principal place of business in Missouri.

a. From its headquarters in Missouri, Defendant produces, markets and distributes the Products in retail stores across the United States including stores physically located in the State of Missouri and this district.

14. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

15. Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## FACTS

### A. Gluten Free Representations are Valuable

16. Consumers have become increasingly concerned about the effects of gluten in their diets. Companies such as the Defendant have capitalized on consumers' desires for purportedly "gluten free" products.

17. Consumer surveys suggest a gluten-free diet is one of the most popular U.S. health food trends in recent years.[1]

---

[1] Miller, D. M. 2016. "Maybe It's Not the Gluten." JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION INTERNAL MEDICINE 176(11):1717-1718.

18.    Part of this surge in interest and demand comes from the consumer's perception that food products with a gluten-free label are healthier than other products.[2]

19.    Indeed, consumers are willing to pay, and have paid, a premium for products labeled "gluten free" over products that are not so labeled.

20.    Studies show consumers pay premium prices over 200% for gluten free food products,[3] while other studies show a premium in excess of 500%.[4]

21.    This surge in demand from consumers has grown the the gluten-free market has been valued at more than $6.6 billion.[5]

22.    Reasonable consumers, including Plaintiff and Class Members, value "gluten free" products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as "gluten free."

---

[2] Navarro, C. "The Effect of Gluten-Free Labels on Customer's Perception of Healthiness, Expected Price, and Willingness to Purchase." (2016) *available at* https://repository.tcu.edu/bitstream/handle/116099117/11315/Navarro__Cori_Jo-Honors_Project.pdf?sequence=1&isAllowed=y.

[3] Stevens L, Rashid M., *Gluten-free and regular foods: a cost comparison*. CAN J DIET PRACT RES. 2008 Fall;69(3):147-50. doi: 10.3148/69.3.2008.147. PMID: 18783640. ("On average, gluten-free products were 242% more expensive than regular products.")

[4] Singh, J & Whelan, K. (2011). *Limited availability and higher cost of gluten-free foods. Journal of human nutrition and dietetics* : JOURNAL OF THE BRITISH DIETETIC ASSOCIATION. 24. 479-86. 10.1111/j.1365-277X.2011.01160.x. ("All 10 gluten-free versions of wheat-based foods were more costly than their standard counterparts (76-518% more expensive.")

[5] Talley, N.J., and M.M. Walker. 2016. "Celiac Disease and Nonceliac Gluten or Wheat Sensitivity: The Risks and Benefits of Diagnosis." JOURNAL OF AMERICAN MEDICAL ASSOCIATION INTERNAL MEDICINE 177(5):615-616.

**B. Defendant Represents to Consumers That the Products Are Gluten Free**

23.    On the front of the Product, Defendant represents to consumers that the Product is "Gluten Free."

24.    For example:



C. **The Products Are Not Gluten Free**

25.    Despite this representation, the Products actually contain gluten.

26.    On February 22, 2022, the U.S. Department of Agriculture's Food Safety and Inspection Service (FSIS) announced that the Product contains wheat and thus is not "gluten free."

27.    As a result, the U.S. Department of Agriculture's Food Safety and Inspection Service (FSIS) ordered a recall for approximately 6,000 pounds of the Product that remained in the marketplace.

D. **Plaintiff Purchased the Product in Reliance of the Gluten Free Representation**

28.    Plaintiff purchased the Products on multiple occasions within the past year. Most recently, she made multiple purchases of the Products in January 2022 and February 2022.

29.    Prior to purchasing the Products, Plaintiff saw and read the front of the product packaging, and relied on the representation and warranty that the product would be "gluten free."

30.    Plaintiff understood these representations to mean that the Products did not contain gluten.

31.    Plaintiff discovered that the Products actually contained gluten in late February 2022.

32.     Plaintiff purchased the Products at a substantial price premium, and would not have purchased the products had she known that the labeling and marketing she relied on was false, misleading, and deceptive.

33.     Plaintiff would purchase the Products again in the future if Defendant changed the composition of the Products so that they conformed to their "gluten free" labeling and marketing.

**E. Defendant's Wrongful Conduct Caused Plaintiff's and Class Members' Injuries**

34.     Defendant knows that consumers are willing to pay more for gluten free foods due to the perception that gluten free foods are higher quality and a healthier alternative to the competition.

35.     As a result of these unfair and deceptive practices, Defendant has likely collected millions of dollars from the sale of the Product that it would not have otherwise earned. Plaintiff and Class Members paid money for food products that are not what they purported to be or what they bargained for. They paid a premium for the Product when they could have instead bought other, less expensive products that do not purport to be gluten free.

36.     In making the false and misleading representations described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, a Product labeled and advertised as gluten free.

37.     As an immediate, direct, and proximate result of Defendant's false and misleading representations, Defendant injured the Plaintiff and the Class Members in that they:

      a.  Paid a sum of money for Products that were not what Defendant represented;

      b.  Paid a premium price for Products that were not what Defendant represented;

      c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

      d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

      e.  Could not be used for the purpose for which they were purchased; and

      f.  Were of a different quality than what Defendant promised.

38.     Had Defendant not made the false, misleading, and deceptive representations, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

39.     Plaintiff and the Class Members paid for Products that were purported to be gluten free but received Products that contained gluten.  The products Plaintiff and the Class Members received were worth less than the products for which they paid.

40.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the representations.

41.     Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

42.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

43.     Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

44.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

## CLASS DEFINITIONS AND ALLEGATIONS

45.    Plaintiff, pursuant to Federal Rule of Civil Procedure 23, brings this action on behalf of the following classes:

   a.  **Multi-State Consumer Class**: All persons in the States of California, Florida, Illinois, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Oregon, and Washington who purchased the Products.[6]

   b.  **Maryland Class**: All persons who purchased Defendant's Product within the State of Maryland and within the applicable statute of limitations.

   c.  **Nationwide Class**: All persons who purchased Defendant's Product within the United States and within the applicable statute of limitations period (collectively, the "Class," "Classes," and "Class Members").

46.    Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all

---

[6] The States in the Multi-State Consumer Class are limited to those States with similar consumer protection laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 ILCS 505/1, et seq.); Maryland; Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. 407.010, et seq.); New Jersey (N.J. Stat. § 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Pennsylvania (73 Pa. Stat. Ann. §§ 201-1 et seq.); Oregon (Or. Rev. Stat. §§ 646.605, et seq.); and Washington (Wash Rev. Code § 19.86.010, et seq.).

persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

47.     The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, tens of thousands of units of the Products to Class Members.

48.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a.  whether Defendant misrepresented material facts concerning the Products on the label of the Product;

b.  whether Defendant's conduct was unfair and/or deceptive;

c.  whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the Classes;

d.  whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

e.  whether Defendant breached express and implied warranties to Plaintiff and the classes;

    f.   whether Plaintiff and the classes have sustained damages with respect

to the common-law claims asserted, and if so, the proper measure of

their damages.

49.   Plaintiff's claims are typical of those of other Class Members because

Plaintiff, like all members of the classes, purchased Defendant's Products bearing

the "gluten free" representations and Plaintiff sustained damages from Defendant's

wrongful conduct.

50.   Plaintiff will fairly and adequately protect the interests of the classes

and has retained counsel that is experienced in litigating complex class actions.

Plaintiff has no interests which conflict with those of the classes.

51.   A class action is superior to any other available means for the fair and

efficient adjudication of this controversy, and no unusual difficulties are likely to be

encountered in the management of this class action. The damages or other financial

detriment suffered by Plaintiff and the other Class Members are relatively small

compared to the burden and expense that would be required to individually litigate

their claims against Defendant, making it impracticable for Class Members to

individually seek redress for Defendant's wrongful conduct. Even if Class Members

could afford individual litigation, the court system could not. Individualized

litigation creates a potential for inconsistent or contradictory judgments, and

increases the delay and expense to all parties and the court system. By contrast, the

class action device presents far fewer management difficulties, and provides the

benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

52.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

53.    The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

**COUNT I**
**Violation of State Consumer Protection Statutes**
**(On Behalf of the Multi-State Consumer Class)**

54.    Plaintiff repeats and realleges each and every allegation above as if set forth herein.

55.    The Consumer Protection Acts of the States in the Multi-State Consumer Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

56.     Defendant intended that Plaintiff and the other members of the Multi-State Consumer Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by its deceptive conduct.

57.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff, and other members of Multi-State Consumer Class, have sustained damages in an amount to be proven at trial.

**COUNT II**
**Violation of the Maryland Consumer Protection Act ("MCPA"),**
**Md. Com. Law §§ 13-301, *et seq*.**
**(On Behalf of the Maryland Class)**

58.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     Plaintiff asserts this claim individually and on behalf of the Maryland Class.

60.     This cause of action is brought pursuant to the Maryland Consumer Protection Act ("MCPA"). MD Code Ann. §§ 13-101, *et seq*. The express purpose of the MCPA is to "set certain minimum statewide standards for the protection of consumers across the State" because "consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit. MD Code Ann. §§ 13-102.

61.     Plaintiff is a "consumer" as defined by the MCPA. MD Code Ann. §§ 13- 101(c)(1).

62.     Defendant's Products are "consumer goods" and "merchandise" within the meaning of the MCPA. MD Code Ann. §§ 13-101(d)(1)-(2),(f).

63.     Defendant is a "merchant" engaged in sales, advertising, and commerce within the meaning of the MCPA. MD Code Ann. §§ 13-101.

64.     The MCPA declares certain actions as unlawful "unfair or deceptive trade practices." MD Code Ann. §§ 13-102. Defendant's unfair or deceptive trade practice in violation of the MCPA includes making "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers"; representing that its "goods and services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have"; advertising consumer goods without the intent to sell them as advertised; and engaging in "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection" with the promotion or sale of its consumer goods and services. MD Code Ann. §§ 13-103.

65.     As set forth more thoroughly above, Defendant's claims are false, deceptive, and misleading to consumers because Defendant's Products contain gluten despite representing to  consumers that the Products are "gluten free."

66.     Plaintiff has standing to pursue this claim because he has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiff would not have purchased Defendant's Products (or

paid a premium for them) had she known the truth concerning the presence of gluten in the Products. As a direct result of Defendant's actions and omissions of material facts, Plaintiff and Maryland Class members did not obtain the value of the products for which they paid; were induced to make purchases that they otherwise would not have; and lost their ability to make informed and reasoned purchasing decisions.

67.   The damages suffered by Plaintiff and the Maryland Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant as described above.

68.   Plaintiff and the Maryland Class make claims for actual damages, attorney's fees and costs. MD Code Ann. §§ 13-408.

## COUNT III
## Breach of Express Warranty
## (On Behalf of the Nationwide Class)

69.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70.   Plaintiff brings this claim individually and on behalf of the Nationwide Class against the Defendant.

71.   Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted and represented that the Product is "gluten free."

72.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is "gluten free."

73.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

74.     Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Product, became part of the basis of the bargain between Defendant and Plaintiff and the Classes, thereby creating an express warranty that the Product would conform to those affirmations of fact, representations, promises, and descriptions.

75.     The Product does not conform to the express warranty because it contains gluten.

76.     Defendant was provided notice of these issues by numerous public complaints and inquiries concerning the presence of gluten in its Products.

## COUNT IV
## Breach of the Implied Warranty of Merchantability
## (On Behalf of the Nationwide Class)

77.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     Plaintiff asserts this claim individually and on behalf of the Nationwide Class.

79.     Defendant is a "merchant" as defined under the U.C.C. and by the respective state statutes under which Plaintiff alternatively asserts this claim.

80.     The Products are "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiff alternatively brings this claim.

81.     Defendant impliedly warranted that the Products were of a merchantable quality. The law implies a warranty that the Products were merchantable in the relevant transactions. The Products, when sold and at all times thereafter, were not in merchantable condition due to the defects and other conditions as alleged above and are not fit for the ordinary purpose for which "gluten free" food products are used

82.     At the point of sale, the Products contained unseen manufacturing or materials defects whose manifestation renders the product ineffective. These defects in the Products existed when the Products left Defendant's possession and rendered them unfit for their ordinary and intended purpose. At all relevant times, including when the Products entered the stream of commerce and were purchased by Plaintiff and Class Members, the Products were defective and not capable of functioning as advertised.

83.     Defendant breached the implied warranty of merchantability because the Products are not of a merchantable quality, but instead contained the defects. Had Plaintiff and Class Members known of the defects, they would not have purchased Defendant's Products, or would have paid less for them.

84.     Plaintiff and Class Members' interactions with Defendant suffice to create privity of contract between Plaintiff and Class Members, on the one hand, and Defendant, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and Class Members are intended third party beneficiaries of contracts (including implied warranties) between Defendant and the retailers who sell the Products. Defendant's warranties were designed for the benefit of consumers who purchased the Products.

85.     As a direct and proximate result of the breach of said warranties, Plaintiff and Class Members were injured and are entitled to damages.

86.     Defendant was provided notice of these issues. Defendant had exclusive knowledge of the defects before the Products were sold. Defendant also received notice of the defects by the large volume of complaints lodged by consumers and federal regulators about the defects.

87.     Defendant's breach of the implied warranty of merchantability damaged Plaintiff and Class Members in an amount to be determined at trial.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

88.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

89.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against the Defendant.

90.     At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Classes.

91.     Plaintiff and members of the Classes conferred upon Defendant nongratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

92.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

93.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

## RELIEF DEMANDED

94.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

    a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

    b. For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

    c. For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

    d. For an order requiring Defendant to immediately cease and desist from selling their misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

    e. For prejudgment and postjudgment interest on all amounts awarded;

    f. For an order awarding punitive damages; and

    g. For an order awarding attorneys' fees and expenses and costs of suit.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: February 28, 2022

Respectfully submitted,

/s/ Steffan T. Keeton
Steffan T. Keeton, Esq.
314635PA
(*pro hac vice forthcoming*)
stkeeton@keetonfirm.com

**The Keeton Firm LLC**
100 S Commons, Ste. 102
Pittsburgh, PA 15212
Phone: 1-888-412-5291

*Attorney for Plaintiff and the Class*