## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

### EASTERN DIVISION

| | |
|---|---|
| Oluwakemi Adewol, Keisha Jackson, and Jemilat Suleiman on behalf of themselves and all others similarly situated, | CASE NO.  4:22-cv-00254-NCC |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| Frickenschmidt Foods LLC and Wicked Cutz LLC, | |
| Defendants. | |

### <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs Oluwakemi Adewol, Keisha Jackson, and Jemilat Suleiman bring this action on behalf of themselves and all others similarly situated against Defendants Frickenschmidt Foods LLC and Wicked Cutz LLC. Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      In an attempt to capitalize on consumer demand for health-focused and "gluten free" foods, Defendants sell their Wicked Cutz products throughout the United States. However, as Defendants know, their "gluten free" products actually contain gluten. Thus, the statement on Defendants' products' labels claiming that the products are "gluten free" is false, misleading, and designed to deceive consumers into paying a price premium and choosing Defendants' products over a competitor's product.

2.      This action seeks to remedy the deceptive and misleading business practices of Defendants with respect to their marketing and sales of their Wicked Cutz Teriyaki Beef Stick (hereinafter "Product" or "Products") throughout the United States of America.

3.      Building upon this deception by labeling and advertising the Products as "gluten free," Defendants create the impression amongst reasonable consumers

that the Products contain no gluten. However, this is not true, and Defendants fail

to adequately inform consumers that the Products contain gluten.

4.      Plaintiffs and those similarly situated ("Class Members") relied on

Defendants' misrepresentations that the Products are "Gluten Free" when

purchasing the Products.

5.      These deceptive representations appear prominently on the Products'

label. For example, on the principal display panel of all of Defendants' Products,

"Gluten Free" is featured prominently.



6.     Plaintiffs and Class Members paid for the Products over and above comparable products that did not purport to be "Gluten Free." Given that Plaintiffs and Class Members paid for the Products based on Defendants' misrepresentations that they are "Gluten Free," Plaintiffs and Class Members suffered an injury in the amount paid.

7.     Additionally, Plaintiffs and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Gluten Free." Given that Plaintiffs and Class Members paid a premium for the Products based on Defendants' misrepresentations that they are "Gluten Free," Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

8.     Defendants' conduct violated and continues to violate, *inter alia*, the consumer protection statutes of many states including the Missouri Merchandising Practices Act and the Maryland Consumer Protection Act. Defendants breached and continue to breach their express and implied warranties regarding the Products. Defendants have been and continue to be unjustly enriched. Accordingly, Plaintiffs bring this action against Defendants on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Defendants. Defendant

Frickenschmidt Foods LLC is a Missouri company with its principle place of

business located in the State of Missouri. Further, Defendants purposefully avail

themselves of the Missouri consumer market and distribute the Products to many

locations within this County and hundreds of retail locations throughout the State

of Missouri, where the Products are purchased by hundreds of consumers every day.

10.     This Court has original subject-matter jurisdiction over this proposed

class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the

Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction

of the federal courts in any class action in which at least 100 members are in the

proposed plaintiff class, any member of the plaintiff class is a citizen of a State

different from any defendant, and the matter in controversy exceeds the sum of

$5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims

of individual members of the proposed Class (as defined herein) are well in excess of

$5,000,000.00 in the aggregate, exclusive of interest and costs.

11.     Venue is proper in this District under 28 U.S.C. § 1391. Substantial

acts in furtherance of the alleged improper conduct, including the dissemination of

false and misleading information regarding the nature, quality, and/or ingredients

of the Products, occurred within this District and the Defendants conduct business

in this District.

## PARTIES

12.     Plaintiff Adewol is a citizen of Maryland.

13.     Plaintiff Jackson is a citizen of Missouri.

14.     Plaintiff Suleiman is a citizen of Texas.

15.     Defendant Frickenschmidt Foods LLC is a Missouri company with its
principal place of business in Missouri.

   a.   From its headquarters in Missouri, Defendant Frickenschmidt
        produces, markets and distributes the Products in retail stores across
        the United States including stores physically located in Missouri and
        this district.

16.     Defendant Wicked Cutz LLC is a Florida company with its principal
place of business in Texas.

   a.   From its headquarters, Defendant Wicked Cutz produces, markets and
        distributes the Products in retail stores across the United States
        including stores physically located in Missouri and this district.

17.     Plaintiffs reserve the right to amend this Complaint to add different or
additional defendants, including without limitation any officer, director, employee,
supplier, or distributor of Defendants who has knowingly and willfully aided,
abetted, or conspired in the false and deceptive conduct alleged herein.

18.     Whenever reference is made in this Complaint to any representation,
act, omission, or transaction of a defendant, that allegation shall mean that the
defendant did the act, omission, or transaction through its officers, directors,

employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## FACTS

### A. Gluten Free Representations are Valuable

19.     Consumers have become increasingly concerned about the effects of gluten in their diets. Companies such as the Defendants have capitalized on consumers' desires for purportedly "gluten free" products.

20.     Consumer surveys suggest a gluten-free diet is one of the most popular U.S. health food trends in recent years.[1]

21.     Part of this surge in interest and demand comes from the consumer's perception that food products with a gluten-free label are healthier than other products.[2]

22.     Indeed, consumers are willing to pay, and have paid, a premium for products labeled "gluten free" over products that are not so labeled.

23.     Studies show consumers pay premium prices over 200% for gluten free food products,[3] while other studies show a premium in excess of 500%.[4]

---

[1] Miller, D. M. 2016. "Maybe It's Not the Gluten." JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION INTERNAL MEDICINE 176(11):1717-1718.

[2] Navarro, C. "The Effect of Gluten-Free Labels on Customer's Perception of Healthiness, Expected Price, and Willingness to Purchase." (2016) *available at* https://repository.tcu.edu/bitstream/handle/116099117/11315/Navarro__Cori_Jo-Honors_Project.pdf?sequence=1&isAllowed=y.

[3] Stevens L, Rashid M., *Gluten-free and regular foods: a cost comparison*. CAN J DIET PRACT RES. 2008 Fall;69(3):147-50. doi: 10.3148/69.3.2008.147. PMID: 18783640. ("On average, gluten-free products were 242% more expensive than regular products.")

[4] Singh, J & Whelan, K. (2011). *Limited availability and higher cost of gluten-free foods. Journal of human nutrition and dietetics* : JOURNAL OF THE BRITISH DIETETIC

24.     This surge in demand from consumers has grown the gluten-free market to a valuation in excess of $6.6 billion.[5]

25.     Reasonable consumers, including Plaintiffs and Class Members, value "gluten free" products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as "gluten free."

## B. False Gluten Free Representations Are Dangerous

26.     According to the FDA, gluten allergies are one of the eight major allergies related to food.[6]

27.     For a person with celiac disease, exposure to gluten can be severely debilitating and possibly deadly.

28.     The FDA states:[7]

In people with celiac disease, foods that contain gluten trigger an immune response that attacks and damages the lining of the small intestine. Such damage may not only limit the ability of celiac disease patients to absorb nutrients, **leading to problems such as iron deficiency anemia**, **osteoporosis**, and **malnutrition**, **but it puts them at increased risk for potentially serious health problems, including intestinal cancers and autoimmune diseases such as diabetes**.

---

ASSOCIATION. 24. 479-86. 10.1111/j.1365-277X.2011.01160.x. ("All 10 gluten-free versions of wheat-based foods were more costly than their standard counterparts (76-518% more expensive.")

[5] Talley, N.J., and M.M. Walker. 2016. "Celiac Disease and Nonceliac Gluten or Wheat Sensitivity: The Risks and Benefits of Diagnosis." JOURNAL OF AMERICAN MEDICAL ASSOCIATION INTERNAL MEDICINE 177(5):615-616.

[6] U.S. Food & Drug Administration, *Food Allergies,* Jan. 31, 2022, https://www.fda.gov/food/food-labeling-nutrition/food-allergies.

[7] *Id.* (emphasis added).

29.     Because of the extreme danger that gluten can present to consumers, the FDA maintains strict requirements for "gluten free" representations.

30.     Failure to adhere to these strict requirements can create deadly consequences for consumers.

**C. <u>Defendants Represent That the Products Are Gluten Free</u>**

31.     On the front of the Product, Defendants represent to consumers that the Product is "Gluten Free."

32.     For example:



**D. The Products Are Not Gluten Free**

33.     Despite these representations, the Products actually contain gluten.

34.     On February 22, 2022, the U.S. Department of Agriculture's Food Safety and Inspection Service (FSIS) announced that the Product contains wheat and thus is not "gluten free."

35.     As a result, the FSIS ordered a recall for approximately 6,000 pounds of the Product that remained in the marketplace.

**E. Plaintiffs Purchased the Product in Reliance of the Gluten Free Representation**

36.     Plaintiff Adewol purchased the Products on multiple occasions within the past year. Most recently, she made multiple purchases of the Products at retailers within the State of Maryland in January 2022 and February 2022 at a purchase price of approximately $2.50 per unit.

    a.   Prior to purchasing the Products, Plaintiff Adewol saw and read the front of the product packaging, and relied on the representation and warranty that the product would be "gluten free."

    b.   Plaintiff Adewol understood these representations to mean that the Products did not contain gluten.

    c.   Plaintiff Adewol discovered that the Products actually contained gluten in late February 2022.

    d.   Plaintiff Adewol purchased the Products at a substantial price premium, and would not have purchased the products had she known

that the labeling and marketing she relied on was false, misleading, and deceptive.

e. Plaintiff Adewol would purchase the Products again in the future if Defendants changed the composition of the Products so that they conformed to their "gluten free" labeling and marketing.

37. Plaintiff Jackson purchased the Product in December 2021 from the Dierbergs store located in Florissant, MO and paid approximately $2.50 per unit.

a. Prior to purchasing the Products, Plaintiff Jackson saw and read the front of the product packaging, and relied on the representation and warranty that the product would be "gluten free."

b. Plaintiff Jackson understood these representations to mean that the Products did not contain gluten.

c. Plaintiff Jackson discovered that the Products actually contained gluten in late February 2022.

d. Plaintiff Jackson purchased the Products at a substantial price premium, and would not have purchased the products had she known that the labeling and marketing she relied on was false, misleading, and deceptive.

e. Plaintiff Jackson would purchase the Products again in the future if Defendants changed the composition of the Products so that they conformed to their "gluten free" labeling and marketing.

38.     Plaintiff Suleiman purchased the Product in January and February 2022 from GNC and Vitamin Shoppe stores located in Houston, TX and paid approximately $2.50 per unit.

   a.  Prior to purchasing the Products, Plaintiff Suleiman saw and read the front of the product packaging, and relied on the representation and warranty that the product would be "gluten free."

   b.  Plaintiff Suleiman understood these representations to mean that the Products did not contain gluten.

   c.  Plaintiff Suleiman discovered that the Products actually contained gluten in late February 2022.

   d.  Plaintiff Suleiman purchased the Products at a substantial price premium, and would not have purchased the products had she known that the labeling and marketing she relied on was false, misleading, and deceptive.

   e.  Plaintiff Suleiman would purchase the Products again in the future if Defendants changed the composition of the Products so that they conformed to their "gluten free" labeling and marketing.

## F. Defendant's Wrongful Conduct Caused Plaintiffs' and Class Members' Injuries

39.     Defendants know that consumers are willing to pay more for gluten free foods due to the perception that gluten free foods are higher quality and a healthier alternative to the competition.

40.     As a result of these unfair and deceptive practices, Defendants have likely collected millions of dollars from the sale of the Product that it would not have otherwise earned. Plaintiffs and Class Members paid money for food products that are not what they purported to be or what they bargained for. They paid a premium for the Product when they could have instead bought other, less expensive products that do not purport to be gluten free.

41.     In making the false and misleading representations described herein, Defendants knew and intended that consumers would pay for, and/or pay a premium for, a Product labeled and advertised as gluten free.

42.     As an immediate, direct, and proximate result of Defendants' false and misleading representations, Defendants injured the Plaintiffs and the Class Members in that they:

    a.  Paid a sum of money for Products that were not what Defendants represented;

    b.  Paid a premium price for Products that were not what Defendants represented;

    c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants warranted;

    d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented;

    e.  Could not be used for the purpose for which they were purchased; and

    f.  Were of a different quality than what Defendants promised.

43.     Had Defendants not made the false, misleading, and deceptive representations, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiffs and the Class Members would not have been willing to purchase the Products.

44.     Plaintiffs and the Class Members paid for Products that were purported to be gluten free but received Products that contained gluten.  The products Plaintiffs and the Class Members received were worth less than the products for which they paid.

45.     Based on Defendants' misleading and deceptive representations, Defendants were able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the representations.

46.     Plaintiffs and the Class Members all paid money for the Products. However, Plaintiffs and the Class Members did not obtain the full value of the advertised Products due to Defendants' misrepresentations. Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiffs and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

47.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

48.     Plaintiffs and the Class members reasonably relied to their detriment on Defendants' misleading representations and omissions.

49.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiffs and the Class Members.

## CLASS DEFINITIONS AND ALLEGATIONS

50.     Plaintiffs, pursuant to Federal Rule of Civil Procedure 23, bring this action on behalf of the following classes (collectively, the "Class," "Classes," and "Class Members"):

   a. **Multi-State Consumer Class**: All persons in the States of California, Florida, Illinois, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Oregon, and Washington who purchased the Products.[8]

---

[8] The States in the Multi-State Consumer Class are limited to those States with similar consumer protection laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 ILCS 505/1, et seq.); Maryland (Md. Com. Law §§ 13-301); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. 407.010, et seq.); New Jersey (N.J. Stat. § 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Pennsylvania (73 Pa. Stat. Ann. §§ 201-1 et seq.); Oregon (Or. Rev. Stat. §§ 646.605, et seq.); and Washington (Wash Rev. Code § 19.86.010, et seq.).

b. **Maryland Class**: All persons who purchased Defendants' Product within the State of Maryland and within the applicable statute of limitations.

c. **Missouri Class**: All persons who purchased Defendants' Product within the State of Missouri and within the applicable statute of limitations.

d. **Nationwide Class**: All persons who purchased Defendants' Product within the United States and within the applicable statute of limitations period.

51.     Excluded from the Classes are Defendants, their parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

52.     The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, tens of thousands of units of the Products to Class Members.

53.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a. whether Defendants misrepresented material facts concerning the Products on the label of the Product;

b. whether Defendants' conduct was unfair and/or deceptive;

c. whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiffs and the Classes;

d. whether Plaintiffs and the Classes are entitled to equitable and/or injunctive relief;

e. whether Defendants breached express and implied warranties to Plaintiffs and the classes;

f. whether Plaintiffs and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

54.    Plaintiffs' claims are typical of those of other Class Members because Plaintiffs, like all members of the classes, purchased Defendants' Products bearing the "gluten free" representations and Plaintiffs sustained damages from Defendants' wrongful conduct.

55.    Plaintiffs will fairly and adequately protect the interests of the classes and has retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the classes.

56.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, making it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

57.     The prerequisites to maintaining a class action for equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

58.     The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual

actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

**COUNT I**
**Violation of State Consumer Protection Statutes**
**(On Behalf of the Multi-State Consumer Class)**

59.     Plaintiffs Adewol and Jackson repeat and reallege each and every allegation above as if set forth herein.

60.     Plaintiffs Adewol and Jackson assert this claim individually and on behalf of the Multi-State Consumer Class.

61.     The Consumer Protection Acts of the States in the Multi-State Consumer Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

62.     Defendants intended that Plaintiffs and the other members of the Multi-State Consumer Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by its deceptive conduct.

63.     As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs, and other members of Multi-State Consumer Class, have sustained damages in an amount to be proven at trial.

**COUNT II**
**Violation of the Maryland Consumer Protection Act ("MCPA"),**
**Md. Com. Law §§ 13-301, *et seq.***
**(In the Alternative to Count I and On Behalf of the Maryland Class)**

64.     Plaintiff Adewol repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     Plaintiff Adewol asserts this claim individually and on behalf of the Maryland Class.

66.     This cause of action is brought pursuant to the Maryland Consumer Protection Act ("MCPA"). MD Code Ann. §§ 13-101, *et seq*. The express purpose of the MCPA is to "set certain minimum statewide standards for the protection of consumers across the State" because "consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit. MD Code Ann. §§ 13-102.

67.     Plaintiff Adewol is a "consumer" as defined by the MCPA. MD Code Ann. §§ 13- 101(c)(1).

68.     Defendants' Products are "consumer goods" and "merchandise" within the meaning of the MCPA. MD Code Ann. §§ 13-101(d)(1)-(2),(f).

69.     Defendants are "merchants" engaged in sales, advertising, and commerce within the meaning of the MCPA. MD Code Ann. §§ 13-101.

70.     The MCPA declares certain actions as unlawful "unfair or deceptive trade practices." MD Code Ann. §§ 13-102. Defendants' unfair or deceptive trade practice in violation of the MCPA includes making "[f]alse, falsely disparaging, or

misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers"; representing that its "goods and services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have"; advertising consumer goods without the intent to sell them as advertised; and engaging in "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection" with the promotion or sale of its consumer goods and services. MD Code Ann. §§ 13-103.

71.     As set forth more thoroughly above, Defendants' claims are false, deceptive, and misleading to consumers because Defendants' Products contain gluten despite representing to  consumers that the Products are "gluten free."

72.     Plaintiff Adewol has standing to pursue this claim because he has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiff Adewol would not have purchased Defendant's Products (or paid a premium for them) had she known the truth concerning the presence of gluten in the Products. As a direct result of Defendants' actions and omissions of material facts, Plaintiff Adewol and Maryland Class members did not obtain the value of the products for which they paid; were induced to make purchases that they otherwise would not have; and lost their ability to make informed and reasoned purchasing decisions.

73.     The damages suffered by Plaintiff Adewol and the Maryland Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants as described above.

74.     Plaintiff Adewol and the Maryland Class make claims for actual damages, attorney's fees and costs. MD Code Ann. §§ 13-408.

## COUNT III
### Violation of Missouri's Merchandising Practices Act, ("MMPA")
### (In the Alternative to Count I and On Behalf of the Missouri Class)

75.     Plaintiff Jackson repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76.     Plaintiff Jackson asserts this claim individually and on behalf of the Missouri Class.

77.     The acts and practices engaged in by Defendants, and described herein, constitutes unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, et seq.

78.     Defendants' actions alleged herein violated, and continue to violate, the MMPA.

79.     Defendants are each a "person" within the meaning of the MMPA. Missouri Revised Statutes § 407.010(5).

80.     The goods purchased from Defendants are "merchandise" within the meaning of the MMPA. Missouri Revised Statutes § 407.010(4).

81.     The transactions resulting in purchases of goods from Defendants in Missouri are a "sale" within the meaning of the MMPA. Missouri Revised Statutes § 407.010(6).

82.     Plaintiff Jackson purchased the Products for personal, family, or household purposes.

83.     Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of the Products in violation of Mo. Rev. Stat. § 407.020, which states in relevant part as follows:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... is declared to be an unlawful practice. ... Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

84.     Defendants' representations that the Products were "gluten free" was a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material misrepresentation.

85.     As described further herein, the presence or lack of gluten in a product is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

86.     Defendants' misrepresentations, deceptions, and omissions were material because they were likely to deceive reasonable consumers.

87.     The foregoing acts and practices of Defendants constituted unfair and unlawful practices, and deceptive conduct, in violation of the Missouri Merchandising Practices Act.

88.     Appropriate injunctive relief is necessary to prevent Defendants' MMPA violations from continuing. If Defendants' violations of the MMPA are not stopped by such injunctive relief, Plaintiff Jackson and the members of the Class will continue to suffer injury.

89.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and the Missouri Class have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

90.     Plaintiff Jackson suffered an ascertainable loss as a result of Defendants' unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented. In addition, the Products are legally worthless.

91.     Plaintiff Jackson and other members of the Missouri Class lost money or property as a result of Defendants' violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with gluten (b) they paid a substantial price premium compared to other food

products due to Defendants' misrepresentations and deceptions; and (c) the

Products do not have the characteristics, uses, or benefits as promised.

92.     Plaintiff Jackson and the Missouri Class seek all monetary and non-

monetary relief allowed by law, including treble damages, attorneys' fees and costs,

and any additional relief this Court deems necessary or proper.

### COUNT IV
### Breach of Express Warranty
### (On Behalf of the Nationwide Class)

93.     Plaintiffs repeat and reallege each and every allegation contained in

the foregoing paragraphs as if fully set forth herein.

94.     Plaintiffs bring this claim individually and on behalf of the Nationwide

Class against the Defendants.

95.     Defendants, as the designer, manufacturer, marketer, distributor,

and/or seller, expressly warranted and represented that the Product is "gluten free."

96.     Defendants provided the Plaintiffs and Class Members with an express

warranty in the form of written affirmations of fact promising and representing that

the Product is "gluten free."

97.     The above affirmations of fact were not couched as "belief" or "opinion,"

and were not "generalized statements of quality not capable of proof or disproof."

98.     Defendants' express warranties, and its affirmations of fact and

promises made to Plaintiffs and Class Members regarding the Product, became part

of the basis of the bargain between Defendants and Plaintiffs and the Classes,

thereby creating an express warranty that the Product would conform to those affirmations of fact, representations, promises, and descriptions.

99.    The Product does not conform to the express warranty because it contains gluten.

100.    Defendants were provided notice of these issues by numerous public complaints and inquiries concerning the presence of gluten in its Products.

101.    Additionally, Plaintiffs provided Defendants notice of these issues prior to the filing of this complaint.

**COUNT V**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class)**

102.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

103.    Plaintiffs assert this claim individually and on behalf of the Nationwide Class.

104.    Defendants are "merchants" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively assert this claim.

105.    The Products are "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively brings this claim.

106.    Defendants impliedly warranted that the Products were of a merchantable quality. The law implies a warranty that the Products were merchantable in the relevant transactions. The Products, when sold and at all times thereafter, were not in merchantable condition due to the defects and other

conditions as alleged above and are not fit for the ordinary purpose for which "gluten free" food products are used

107. At the point of sale, the Products contained unseen manufacturing or materials defects whose manifestation renders the product ineffective. These defects in the Products existed when the Products left Defendants' possession and rendered them unfit for their ordinary and intended purpose. At all relevant times, including when the Products entered the stream of commerce and were purchased by Plaintiffs and Class Members, the Products were defective and not capable of functioning as advertised.

108. Defendants breached the implied warranty of merchantability because the Products are not of a merchantable quality, but instead contained the defects. Had Plaintiffs and Class Members known of the defects, they would not have purchased Defendants' Products, or would have paid less for them.

109. Plaintiffs and Class Members' interactions with Defendants suffice to create privity of contract between Plaintiffs and Class Members, on the one hand, and Defendants, on the other hand; however, privity of contract need not be established nor is it required because Plaintiffs and Class Members are intended third party beneficiaries of contracts (including implied warranties) between Defendants and the retailers who sell the Products. Defendants' warranties were designed for the benefit of consumers who purchased the Products.

110. As a direct and proximate result of the breach of said warranties, Plaintiffs and Class Members were injured and are entitled to damages.

111.    Defendants were provided notice of these issues. Defendants had exclusive knowledge of the defects before the Products were sold. Defendants also received notice of the defects by the large volume of complaints lodged by consumers and federal regulators about the defects.

112.    Defendants' breach of the implied warranty of merchantability damaged Plaintiffs and Class Members in an amount to be determined at trial.

## COUNT VI
## Unjust Enrichment
## (On Behalf of the Nationwide Class)

113.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

114.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against the Defendants.

115.    At all times relevant hereto, Defendants deceptively marketed, advertised, and sold merchandise to Plaintiffs and the Classes.

116.    Plaintiffs and members of the Classes conferred upon Defendants nongratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendants accepted or retained the nongratuitous benefits conferred by Plaintiffs and members of the Classes, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiffs and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

117.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendants' misrepresentations about the Products, which caused injuries to Plaintiffs and Class Members because they would not have purchased the Products if the true facts had been known.

118.    Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Classes for their unjust enrichment, as ordered by the Court.

## **RELIEF DEMANDED**

119.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent the members of the Classes;

b.  For an order declaring the Defendants' conduct violates the statutes and laws referenced herein;

c.  For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiffs and the Classes for all causes of action;

d.  For an order requiring Defendants to immediately cease and desist from selling their misbranded Products in violation of law; enjoining Defendants from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

e.  For prejudgment and postjudgment interest on all amounts awarded;

f.  For an order awarding punitive damages; and

g.  For an order awarding attorneys' fees and expenses and costs of suit.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action and issues so triable.


Dated: March 12, 2022

Respectfully submitted,

/s/ Steffan T. Keeton
Steffan T. Keeton, Esq.
314635PA
(*pro hac vice forthcoming*)
stkeeton@keetonfirm.com

**The Keeton Firm LLC**
100 S Commons, Ste. 102
Pittsburgh, PA 15212
Phone: 1-888-412-5291

*Attorney for Plaintiff and the Class*
