**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **OLUWAKEMI ADEWOL, KEISHA JACKSON, and JEMILAT SULEIMAN** on behalf of themselves and all others similarly situated,<br><br>           **Plaintiffs,**<br><br>**v.**<br><br>**FRICKENSCHMIDT FOODS, LLC and WICKED CUTZ, LLC,**<br><br>           **Defendants.** | **Case No. 4:22-cv-00254-CDP** |

**DEFENDANT FRICKENSCHMIDT FOODS, LLC'S**
**REPLY SUGGESTIONS OF IT'S MOTION TO DISMISS FIRST AMENDED CLASS**
**ACTION COMPLAINT AND STRIKE ALLEGATIONS OR, IN THE ALTERNATIVE,**
<u>**MOTION FOR A MORE DEFINITE STATEMENT**</u>

I.      **Plaintiffs' State Law Claims are Expressly Preempted by Federal Law**

Technically yes, Plaintiffs are correct that the United States Department of Agriculture

("USDA") regulates the labeling of meat products through its Food Safety and Inspection

Service ("FSIS"). *Thorton v. Tyson Foods, Inc.,* 482 F.Supp.3d 1147, 1153 (D. N.M 2020).

Nonetheless, that fact does not preclude the preemption argument against Plaintiffs' state law

claims. Here's how the USDA and FDA's statutes and regulations connect to preempt Plaintiffs'

state law claims concerning the "gluten-free" label affixed to the Products:

- The USDA expressly preempts the states from imposing any new or different labeling requirements on meat products (21 U.S.C.A. § 678);

- A final "glute-free" label on a meat product may only be used if that label has been submitted for approval to the FSIS (9 C.F.R. §§ 412.1(a), 412.1(c)(3));

- Working with the FDA, the FSIS has been communicating with manufacturers under their jurisdiction who labels a food "gluten-free" to comply with FDA rules;

- The FDA standards permit a "gluten-free" label if the use of the gluten-containing ingredient results in the presence of less than 20 ppm of gluten in the food; (21 C.F.R. § 101.91(a)(3)) and provides compliance standards to use to reliably detect and quantify the presence of 20 ppm gluten. (21 C.F.R. § 101.91(c)(1)); and

- The FDA "gluten-free" labeling regulation also expressly preempts states from imposing any new or different labeling requirements (21 C.F.R. § 101.91(d)).

Plaintiffs' FACAC and Opposition brief unquestionably present the issue whether Frickenschmidt's "gluten free" labeling complies with federal law.  Importantly, Plaintiffs' claims would ultimately require the fact-finder to determine whether the Product's label violated federal law and, if so, to possibly interpret it to require *additional or different* labeling requirements that the USDA and FDA do not impose. Frickenschmidt urges the Court to defer to the agencies' expertise in this realm and to defer to the statutory mandate and corresponding regulatory schemes that are available on the subject of "gluten free" labeling.  Simply stated, this Court should not enter this fray – to do so would intrude on the province and expertise of the USDA and FDA. That is not the proper purpose of private lawsuits, especially class actions. *See also*, *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 491 (7th Cir. 1998) (noting that a "federal remedy is preferable, since class actions . . . under state law, could disrupt the federal regulatory scheme").

### A.  The USDA's express preemption statute is applicable here

Plaintiffs' section on the judicial presumption against preemption is of no consequence here. Such a presumption only applies in the field preemption and conflict preemption contexts.

*See, e.g.*, *In re Aurora Dairy Corp. Organic Milk Mktg & Sales Prac. Litig.*, 621 F.3d 781, 792 (8th Cir. 2010) (noting presumption against preemption when discussing field and conflict preemption, but not when evaluating express preemption). But where Congress has expressly preempted state law claims through statutory text, as the Federal Meat Inspection Act ("FMIA") and the FDA "gluten-free" labeling regulation does, no such presumption exists. *See, Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct. 1938, 1946 (2016) ("[B]ecause the [federal] statute contains an express pre-emption clause, we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.") (citation and quotation omitted).

Section §678 of FMIA is clear and unambiguous:

[m]arking, labeling, packaging, or ingredient requirements *in addition to, or different than,* those made under this chapter *may not be imposed by any State or Territory or the District of Columbia* with respect to articles prepared at any establishment under inspection in accordance with the requirements under subchapter I of this chapter, . . .

(emphasis added). In addition, the FDA regulation regulating "gluten-free" labeled food includes an express preemption provision.

A State or political subdivision of a State may not establish or continue into effect any law, rule, regulation, or other requirement that is different from the requirement in this section for the definition and use of the claim "gluten-free", as well as the claims "no gluten," "free of gluten," or "without gluten."

21 C.F.R. § 101.91(d).

Where Congress has expressly preempted state law claims through statutory text there is no presumption against preemption. *Puerto Rico,* 136 S. Ct. at 1946 (2016). Thus, non-identical state laws, including those effectuated through civil suits, relating to labeling on meat products are unquestionably preempted under federal law. *Thorton v. Tyson Foods, Inc.,* 482 F.Supp.3d 1147, 1157-58 (D. N.M. 2020)(collecting cases regarding USDA's and FSIS' preemptive effect).

Importantly, a state law claim is preempted not only when it would "prohibit[] labeling that is permitted under federal law" but also when it would "prohibit[] labeling that is *not prohibited* under federal law." *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D. N.Y. 2014) (granting motion to dismiss). "The standard . . . is not whether a state law actively undermines federal law. It is whether the state law diverges from federal law *at all*." *Id.* (emphasis added); *see Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) ("The disclaimers that the plaintiff wants added to the labeling of the defendants' [food product] are not identical to the labeling requirements imposed on such products by federal law, and so they are barred.").

## B. The FSIS necessarily relies upon the FDA "gluten free" labeling regulation for meat products

The only USDA regulation regarding "gluten free" labeling of meat products is found at 9 C.F.R. § 412.1 The FSIS provides that "no final label may be used on any product unless the label has been submitted for approval to the FSIS . . ." 9 C.F.R. § 412.1(a). The FSIS requires submission of labeling applications for "special statements and claims". 9 C.F.R. § 412.1(c)(3). Special statements and claims "that are generally not defined in FSIS regulations or the Food Standards Labeling Policy Book must be submitted to FSIS for approval." USDA-FSIS Publication, "FSIS Compliance Guideline for Label Approval" July 2020, p 6. These special statements and claims include "negative claims (e.g. "gluten free")". *Id.* Nevertheless, the FSIS fails to set forth the standards upon which they will approval a label with a negative claim such as "gluten free" on it. However, just because the USDA and FDA do not cover the same foodstuffs doesn't mean that these federal agencies can't work together to harmonize their statutes and regulations regarding "gluten-free" labeling.  In fact, that is just what they are attempting to do.

### C.  The USDA and FDA's history of working together on "gluten-free" labeling

In August of 2013, when the FDA set forth its final ruling on "gluten-free" labeling, the FDA specifically responded to the citizen comments regarding the inter-relationship of the USDA and FDA regulations.

> (Comment 37) Many comments urged FDA to coordinate with the U.S. Department of Agriculture (USDA) so that FDA and USDA have the same standard for foods labeled "gluten-free." Other comments indicated that the same definition of "gluten-free" should apply to all foods and that "gluten-free" labeling of foods should be mandatory and not voluntary to be protective of individuals with celiac disease.

> (Response 37) We have been in contact with both the Food Safety and Inspection Service (FSIS, which is an Agency within USDA) and TTB[1] concerning our gluten-free rulemaking and related issues. USDA regulates the labeling of all poultry, most meats, and certain egg products, and TTB regulates the labeling of most alcoholic beverages. We expect to continue working with both FSIS and TTB on matters relating to use of the term "gluten-free."

> Regarding the comments to make gluten-free labeling "mandatory," section 206 of FALCPA directed us to establish a definition for the term "gluten-free" and "permit" use of this term in the labeling of food. We consider the use of the word "permit" instead of "require," to mean that manufacturers may, but are not required to, label their food products "gluten-free" provided that they comply with our rule.

78 FR 47154-20, 2013 WL 3965094 (Aug. 5, 2013)(clarification footnote added).

In fact, this harmonization has been a goal between the FDA and USDA well before the enactment of the "gluten-free" regulation.

> . . . FSIS and FDA desire to ensure as much harmonization as possible of the nutrition labels for all food products, including simultaneous publication of final regulations. Harmonization will ensure consistency of format and content for consumers and, thereby, will encourage the use of the new labels, while minimizing the cost of compliance on the food industry.

58 FR 632-01, 1993 WL 1405(F.R.) (Jan. 6, 1993).

---

[1] The Alcohol and Tobacco Tax and Trade Bureau.

The FDA's website states that it will work with the USDA to harmonize the requirements for the foods labeled "gluten-free" among the agencies.[2] The "FDA continues to work with USDA . . .to harmonize the requirements as much as possible, taking into consideration our different statutory authorities."[3]

And do not be mistaken, the standards and regulations relating to "gluten free" labeling on food and beverages are still evolving.  For instance, the TTB has acknowledged that when it comes to "gluten free" label standards related to the labeling of alcohol beverages the agency confirms that, "TTB's policy on gluten content statements is still an interim one; therefore, that issue is not addressed the proposed rule [on the modernization of the labeling and advertising regulations for distilled spirts and malt beverages] (see TTB Ruling 2014-2)." 87 FR 7526-01, 2022 WL 377365 (Feb. 9, 2022).

### D.  The FSIS relies upon the FDA "gluten-free" regulatory standards

The FSIS has set forth regulations regarding the labeling of "gluten-free" meat products, 9 C.F.R. § 412.1, and the standards the FSIS considers when deciding if a product may be labeled "gluten free" are found in the FDA regulations.[4]   Although, "[t]he USDA does not have a ["gluten-free"] labeling rule [it] does state that manufacturers who include a GF claim on product packaging must comply with the FDA rule." Keller, Amy, "Timely Topics in Gluten-Free Labeling" *Practical Gastroenterology,* p. 36 (Dec. 2019). In fact, the USDA continues to communicate with the public that it will rely on the FDA rule.

---

[2] "Questions and Answers on the Gluten-Free Food Labeling Final Rule" FDA, https://www.fda.gove/food/food-labeling-nutrition/questions-and-answers-gluten-free-food-labeling-final-rule (accessed June 28, 2022).
[3] *Id.*
[4] Plaintiffs do not offer any regulations, rulings or congressional records regarding what FSIS standards pertain to "gluten-free" labeling of meat products, and thus an assumption that it would be a "zero tolerance" standard is misleading.

The FDA's gluten-free labeling rule does not cover foods regulated by the USDA. BUT (and this is important), the USDA has told me repeatedly in email correspondence that while they are not planning to define gluten-free under USDA rules, a manufacturer under their jurisdiction who labels a food gluten-free must comply with FDA rules. In addition (and this is more than what is required by FDA), if a food regulated by the USDA includes a gluten-free claim, the label of that food must be preapproved by the USDA.

Thompson, Tricia, "USDA-regulated foods and gluten-free labeling", Gluten Free Watchdog,

https://www.glutenfreewatchdog.org/news/usda-regulated-foods-and-gluten free-labeling/ (May

20, 2017). The FSIS has been making statements regarding how it would follow a FDA "gluten

free" regulation even before the FDA regulation was enacted.

In previous communications with FSIS, I have been told the following regarding USDA-regulated foods and gluten-free labeling, (this information was reconfirmed with USDA via email on August 29, 2013 after publication of the final gluten-free labeling rule), "FSIS is not planning at this time to conduct rulemaking to define "gluten free." Rather, once FDA's final rule becomes effective, if a meat, poultry, or egg product establishment chooses to make the claim "gluten free" they will need to follow the requirements for the use of the claim in FDA's regulations. This is similar to what FSIS has required when establishments choose to make health claims and label trans-fat on meat, poultry, and egg products (i.e., FSIS allows the use of FDA regulated health claims and the declaration of trans-fat on labels provided the establishments follows FDA's regulations). This would ensure consistency for the use of the claim "gluten free" across all food groups for consumers. FSIS will clarify this position through policy guidance published on its web-site.

Thompson, MS, RD, Tricia, "Labeling of USDA-regulated foods straight from the USDA",

Gluten Free Dietitian, https://www.glutenfreedietitian.com/labeling-of-usda-regulated-foods-

straignt-from-the-usda/ (Nov. 11, 2009, updated 2014)(accessed June 30, 2022).

This reliance upon the FDA standards regarding "gluten-free" labeling on consumables

that fall outside the typical jurisdiction of the FDA is not uncommon.  For instance, the TTB has

set forth a recent ruling explaining their reliance on the FDA "gluten-free" labeling standards

prior to the FDAs "gluten free" labeling regulations for fermented or hydrolyzed foods. TTB

Ruling, 2020-2 (Oct. 13, 2020). "TTB is continuing to authorize the term "gluten-free" on labels

and in advertisements if the product would be entitled to make a "gluten-free" on labels and in advertisements if the product would be entitled to make a "gluten-free" labeling claim under the definition set forth in FDA regulations." *Id.*

The real world effect of permitting Plaintiffs' state law claims to go forward and create a requirement that there be a "zero tolerance" standard of gluten for meat products bearing a "gluten-free" label is to hinder the expert federal agencies' work in properly and consistently approving food labels. The express preemption statutes and regulations of the USDA and FDA were enacted to prevent such attacks to their authority as this. Plaintiffs should not be permitted to impose additional and differing standards through state law requirements that are not identical to those found in the existing federal statutes and regulations.

## II.    Plaintiffs' Nationwide Class Common Law Claims should be Dismissed

### A.    There is no federal common law claims for breach of warranty, breach of implied warranty of merchantability and unjust enrichment claims.

Plaintiffs fail to address Frickenschmidt's argument that the common law nationwide class claims should be dismissed on the basis that there is no federal common law to support them. Rather, Plaintiffs address the federal common law theory only in a footnote. Yet, "arguments raised only in footnotes are waived." *Ronchin v. Hoop*, 2021WL 4902456, *3 (N.D. Ill. Oct. 21, 2021); *see Caranchini v. Nationstar Mortgage, LLC,* 2022 WL 1156543, *3 n. 2 (W.D. Mo. Apr. 19, 2022)(citing *Heuton v. Ford Motor Co.,* 930 F.3d 1015, 1023 (8th Cir. 2019)). And "[a] plaintiff's failure to address a defendant's arguments on a motion to dismiss operates as an abandonment of those claims." *Jarrett v. Henkel Corp.,* 2016 WL 409819, *2 (W.D. Mo. Feb. 2, 2016); *see e.g., Ursery v. Fed. Drug Enf't Admin.,* 2014 WL 117627, *2 (E.D. Mo. Jan. 13, 2014)(collecting cases). Because Plaintiffs' do "not address Defendant's argument . . . , Plaintiff[s] tacitly waive[] an argument to the contrary." *Goodwin v. Vill. of Oakview,*

*Missouri*, 2019 WL 1344727, *3 (W.D. Mo. Mar. 25, 2019) (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)). Having waived this argument, Plaintiffs' nationwide class' common law claims may be dismissed as there is no federal common law to support its warranties or unjust enrichment claim. *See also, Hutchison v. Texas Cnty., Missouri*, 2010 WL 11509268, *5 n.5 (W.D. Mo. Apr. 30, 2010) ("By failing to respond to this argument, Plaintiff's . . . claim is subject to dismissal as having been waived.").

### B. It is not premature to dismiss Plaintiffs' nationwide common law claims at this time nor must the Court perform a complete choice of law analysis before dismissing Plaintiffs' nationwide common law claims.

Plaintiffs' Opposition evades the issue of whether their nationwide common law claims are viable, and instead argue that Frickenschmidt's Motion to Dismiss their nationwide claims is "premature". (Pl's Opp'n 14-19, 21).  However, the Eighth Circuit has held that "class claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion." *McCrary v. Stifel, Nicolaus & Co.,* 687 F.3d 1052, 1059 (8th Cir. 2012). For instance, "class claims that fail to meet the requirements of Rule 23(b)(3)'s predominance requirement . . . will not be appropriate for class treatment and may be dismissed." *Knowles v. Standard Fire Ins. Co.,* 2013 WL 6497097, *2 (W.D. Ark. Dec. 11, 2013)( citing *McCrary,* 687 F.3d at 1059); *see also, In re St. Jude Med. Inc. Silzone Heart Valves Prods. Liab. Litig.,* 2009 WL 1789376, *2 (D. Minn. June 23, 2009)("Where the class allegations are insufficient to support certification, a district court has the authority and discretion to strike those allegations under Rule 23 ...").  That is precisely the case here, as Plaintiff's putative nationwide class is unmanageable as a matter of law and should be dismissed.

Frickenschmidt requests that the nationwide common law class claims be dismissed, or alternatively more definitely stated. All the same, this Circuit has even held that a district court

abuses its discretion *by not striking* class action allegations when the class "would not be cohesive" due to, among other things, the "existence of a significant number of individualized . . . legal issues." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092-93 (8th Cir. 2021). Which is exactly the instance we have here.

It is the Eighth Circuit's view that, unlike Plaintiffs contend, it "is 'sensible . . . to permit class allegations to be stricken at the pleading stage' if it is 'apparent from the pleadings that the class cannot be certified' because 'unsupportable class allegations bring 'impertinent' material into the pleading' and 'permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained.'" *Id.* at 1092. Moreover, it is in the court's "'liberal discretion' when deciding whether to strike any portion of a pleading" . . . and "may strike class allegations when they involve *'a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion.'* A court may strike or dismiss class claims that do not meet the requirements of Rule 23." *Mojica v. Securus Techs., Inc.*, 2015 WL 429997, at *5 (W.D. Ark. Jan. 29, 2015)(citations omitted)(emphasis added). In fact, "such a class is rarely, if ever, appropriate where," as here, "each plaintiff's claim will be governed by the law of his own State." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011) (quoting *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015, 1018 (7th Cir. 2002)). "Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." *Id.*

Plaintiffs divert attention away from this problem by focusing on what they contend is the premature choice-of-law analysis this Court must undertake before it can dismiss Plaintiffs' nationwide class. Plaintiffs direct this Court to cases that Plaintiffs' insist require it to perform a factually intensive analysis before dismissal. However,  "[s]ome choice of law issues may not

require a full factual record and may be amenable to resolution on a motion to dismiss." *In re Shop-Vac Mktg. & Sales Pracs. Litig.,* 2014 WL 3557189, at *4 (M.D. Pa. July 17, 2014) (quoting *Harper v. LG Elecs. USA, Inc.,* 595 F.Supp.2d 486, 491 (D.N.J.2009)). "A pre-requisite to a choice of law analysis is that a conflict in the laws actually exist; courts have noted that before "entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Id.* (quoting *Jean v. Dugan,* 20 F.3d 255, 260 (7th Cir.1994)). In *re Shop-Vac,* cited by Plaintiffs, the court deferred a ruling on choice-of-law analysis, not because it was brought during the motion to dismiss, but rather because the defendants in that case "[did] not highlight for the Court the conflicts in potentially applicable state laws, nor [did] they address how any differences are material to the Court's disposition of the pending motion." *Id.* at *5. Contrarily, Frickenschmidt will highlight the differences in the relevant states' laws on warranty claims before this Court and will address how the differences are material to the Court's disposition of this motion.

### C.  The differences among the 50 states and 5 U.S. territories laws regarding warranty claims do not support a nationwide class claim.

Plaintiffs argument that there are no material conflicts within the 50 states and 5 territories[5] of the United States' law involving the warranty claims is unpersuasive. Each putative class member's breach of warranty claims should be governed by the law of the state where they purchased the Products.  Because Plaintiffs cannot apply the law of any one state nationwide, application of the laws of the 50 states renders the nationwide putative class unmanageable.

---

[5] Plaintiffs define their nationwide class as " All persons who purchased Defendants' Product within the United States" (FACAC ¶ 50(d)). This broad definition necessarily includes the 50 states and the United States' five major territories, including Puerto Rico and Guam, and various islands. For purposes of this Reply, hereafter the term "50 states" include the 5 U.S. territories and islands.

Throughout their Opposition, Plaintiffs cites various states' cases to demonstrate that their warranty claims are virtually identical in all states. For instance, Plaintiffs cite case law to support that most states have adopted the U.C.C. and therefore the states' laws on the breach of warranty claims are "substantially similar". (Pl's Opp'n p. 20). Not so. Although forty-nine states have adopted the U.C.C., (*In re Cir. City Stores, Inc.*, 416 B.R. 531, 535 (Bankr. E.D. Va. 2009) each jurisdiction, via its legislature's adoption, may make its own modifications, and may organize the code as they deem fit. *Badilla V. Wal-Mart Stores East In.,* 357 P.3d 936, 939 (N.M. 2015)("[B]ecause the individual states have the power to adopt whatever version or modifications the state pleases, there is a substantial amount of non-uniformity among the states.")  Thus, contrary to Plaintiffs' contention, states actually differ on what constitutes reasonable notice, to whom notice must be given, and if there is a food exception to the privity requirement of implied warranty claims.

### 1.  States vary on to whom reasonable notice must be given

Take for instance, the following states require that pre-suit notice be given to the manufacturer and not only the seller in a breach of warranties claims.

**Arkansas**:  *Thomas v. Borg-Warner Morse Tec, LLC,* 362 F.Supp.3d 610, 614 (E.D. Ark. Dec. 21, 2018)(dismissing plaintiff's claim for breach-of-warranty against manufacturer of asbestos-containing brakes and sellers of brakes for plaintiff's failure to provide notice before bringing suit); and

**Illinois**: *Bd. of Educ. of City of Chicago v. A,C and S, Inc.,* 546 N.E.2d 580, 596 (affirming dismissal of breach of warranty claims where notice not given to defendants manufacturers and those in the distribution chain of asbestos-containing material); *Goldstein v. G. D. Searle & Co.*, 378 N.E.2d 1083, 1087 (Ill. App. 1978) ("remote manufacturer may raise as

a defense to the maintenance of suit by a subpurchaser for breach of implied warranty the latter's failure to reasonably notify his immediate seller of the breach."); and

**Michigan**: *Gregorio v. Ford Motor Co.,* 522 F.Supp.3d 264, 284 (E.D. Mich. 2021)(dismissing Michigan's plaintiff's breach of warranty claims against car manufacturer because "Michigan courts interpret the notice requirement strictly, requiring that "upon discovering a breach, the buyer must provide reasonable pre-suit notice to even a remote manufacturer lest the buyer be barred from any remedy."); and

**New York**: *Cooper v. Anheuser-Busch, LLC,* 553 F.Supp.3d 83, 112-113 (S.D. N.Y. 2021)(dismissing plaintiffs warranty claim against manufacturer defendant where plaintiffs didn't allege facts to support that they notified them within a reasonable time after the discovery of the breach); and

**Pennsylvania**: *In re Shop-Vac Mktg. & Sales Practices Litig.*, 2014 WL 3557189, at *8, n.10 (M.D. Pa. July 17, 2014)(recognizing that Pennsylvania's 2607(c)(1) requires notice to a manufacturer prior to bringing suit on a breach-of-warranty theory); and

**Texas**: *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 199 (Tex. App. 2003) ("under section 2.607(c)(1), a buyer is required to give notice of an alleged breach of warranty to a remote manufacturer.").

Legal experts on the subject provide a very logical explanation of their endorsement of a notice requirement for remote manufacturers, "If the manufacturer is to be held responsible for the buyer's losses, it needs the protection of timely notice at least as much as the buyer's immediate seller." *U.S. Tire-Tech,,* 110 S.W.3d at 199 (quoting James J. White & Robert S. Summers, Uniform Commercial Code § 11-10 (4th ed. 1995)). Plaintiffs' Opposition only speak

to Missouri case law, so there are at least 49 other states that may have varying laws concerning breach of warranty claims as well.

At a minimum, Texas Plaintiff Suleiman's breach of warranty claims must be dismissed because in Texas, the buyer must provide notice to the manufacturer. *U.S. Tire-Tech*, 110 S.W.3d at 199. In fact, Plaintiffs' Opposition did not contest that Texas and Illinois require notice to a manufacturer, rather they only cite to Missouri. (Pl's Opp'n, p. 5-6). Yet, in the same breath they fail to cite any Missouri law regarding the "actual knowledge" notice theory. (Pl's Opp'n, 6-7, citing only federal California and Illinois cases). Obviously, the state's adoption of the U.C.C. is not as uniform as Plaintiffs would hope for.

### 2. States vary on whether actual knowledge by the defendant constitutes the type of notice required under § 2-607

Plaintiffs claim that since Frickenschmidt processed the meant, prepared the Products, packaged the Products and distributed the Product it had "actual knowledge" of the Plaintiffs' breach of warranty claims.[6] Not all states follow the actual knowledge exception to §2-607's notice requirement that Plaintiffs' highlight.  (Pl's Opp'n, pp. 6-7). In fact, several states conclude that actual knowledge of the defendant seller or manufacturer of the defect is not "the kind of notice" required by law. Instead, as Judge Learned Hand explained in a pre-UCC case, still relied upon today, "[t]he notice of the breach required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of *the buyer's* claim that they constitute a breach." *Am. Mfg. Co. v. United States Shipping Bd. E.F. Corp.,* 7 F.2d 565, 566 (2nd Cir. 1925)(emphasis added).

---

[6] Plaintiffs also asserted that Frickenschmidt "created the labels for the Products", (Pl's Opp'n, p. 6), however, that was not the case in this instance and Plaintiff has brought forth no evidence indicating same.

The states finding that a defendants' actual knowledge is not enough to qualify as the requisite notice, include:

**Alabama**: *Fowler v. Goodman Mfg. Co. LP,* 2014 WL 7048581 (N.D. Ala. Dec. 12, 2014)(finding that mere knowledge of the unit's failures and questions from the buyer about the terms and scope of the limited warranty did not provide the requisite notice of a breach of warranty); and

**Illinois**: *Block v. Lifeway Foods, Inc.*, 2017 WL 3895565, *6 (N.D. Ill. Sept. 6, 2017)(holding that, "a company that is generally aware of problems with a particular product line will still be unable to resolve breach of warranty claims without a lawsuit if it is unaware which consumers claim to have suffered a breach."); and

**Maryland**: *Lloyd v. General Motors Corp.,* 575 F. Supp.2d 714, 723 (D. Maryland 2008)(dismissing plaintiffs' warranty claims despite plaintiffs' contention that defendants' "actual, timely notice that their cars  are not merchantable" due to similar class actions brought against defendants in other jurisdictions was not the "kind of 'notice,' . . .that the law requires."); and

**South Dakota**: *Brookings Mun. Util. Inc. v. Amoco Chem., Co.*, 103 F.Supp.1169, 1177 (D. S.D. 2000)(holding that while plaintiffs claim that defendants knew about defects in the pipes at issue from problems with other buyers, a defendant's "actual knowledge of defects does not excuse a buyer from providing notice of breach"); and

**4th Circuit (Va.)**: *Aqualon Co. v. Mac Equip., Inc.,* 149 F.3d 262, 266-267 (4th Cir. 1998), *abrogated in part on other grounds by Grupo Dataflux v. Atlas Global Grp., L.P.,* 541 U.S. 567, 672 (2004)(finding that the purposes of the UCC notice requirements were not met by seller's actual knowledge that its valves were inadequate).

Consequently, at a minimum Maryland Plaintiff Adewol's breach of warranty claims must be dismissed because in Maryland Plaintiff's actual knowledge argument fails (*Lloyd,* 575 F. Supp.2d at 723) and Plaintiffs' §2-607(3)(a) notice to Frickenschmidt within a reasonable time after discovery of the breach nor was the notice provided pre-suit. (Memo in Support, pp. 15-17).

### 3. States vary on whether there is a food exception to the privity requirement for implied warranty claims

Plaintiffs' identification that Missouri has a food exception to the privity rule concerning breach of implied warranty claims ignores the fact that a majority of the 50 states do not follow the food exception. *See* Privity of contract as essential to recovery in action based on theory other than negligence, against manufacturer or seller of product alleged to have caused injury. 75 A.L.R.2d 39, §12[a] (supplemented since original date of 1961 publication)(providing only 20 states, including Missouri, follow the food exception). *See also, Chaffin v. Atlanta Coca Cola Bottling Co.,* 194 S.E.2d 513, (Ga. App. 1972)(holding that in Georgia an ultimate buyer of a Coca Cola "cannot sue the manufacturer directly on a breach of implied warranty where the buyer does not purchase directly from the manufacturer"); *Pelletier v. Dupont,* 128 A.186, 187 (Me. 1925)(holding that the court found "no good reason for repudiating or modifying, even in the case of food products, however prepared, the well-established rule that, in order to recover on a warranty, there must be a privity of contractual relations between the parties, which is wholly lacking in the case at bar.").

In fact, identifying that Missouri does not require privity when it comes to food, and that Texas and Maryland do not have privity requirements for any type of warranty action further illustrates how much the law concerning warranty claims vary.

### D. The Products passed without objection in trade.

As far as Plaintiffs' contention that the Products could not "pass without objection in trade", (Pl's Opp'n. pp. 11-12), Frickenschmidt rejects that the Product at issued did not meet the available federal requirements for the placement of a "gluten free" label on the beef stick. See Section A above, and Section C.4.a of the Memo. in Support.

### E.      The nationwide unjust enrichment claims should be dismissed

Plaintiffs argue that there are no material conflicts in the common law counts. But rather they are just turning a blind eye to the legal precedent in states that do not conform to their liking. Plaintiffs cite to *Overka v. Am. Airlines, Inc.,* 265 F.R.D. 14 (D. Mass. 2010) a case noting that at least 34 states have substantially similar unjust enrichment laws. But in *Overka,* a class certification opinion, the court only considered the 34 states where American Airlines offered skycap services.[7] Nothing is mentioned about the remaining 16 states which Plaintiffs' allege house members of its nationwide class.

Further, Plaintiffs' cite to *In re Terazosin Hydrochloride,* 220 F.R.D. 672 (S.D. Fla. 2004) to support their argument that the unjust enrichment claims should not be dismissed because unjust enrichment claims are "substantially similar" throughout the states. Again, Plaintiffs fail to consider other jurisdictions that have come to the opposite conclusion.  *See Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 584 – 585 (N.D. Ill. 2008). "Indeed, "unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone among the fifty state." *Id.* at 584 (quoting *In re Sears, Roebuck & Co.,* 2006 WL 3754823 at *1 n.3 (N.D. Ill. Dec. 18, 2006)). In particular,

> variances exist in state common laws of unjust enrichment. The actual definition
> of 'unjust enrichment' varies from state to state. Some states do not specify the

---

[7] In *Overka,* American Airlines skycaps filed suit against the airline, on behalf of alleged nationwide class of employees, for the imposition of a $2 per bag charge for curbside check-in services.

misconduct necessary to proceed, while others require that the misconduct include
dishonesty or fraud. Other states only allow a claim of unjust enrichment when no
adequate legal remedy exists.  Many states, but not all, permit an equitable
defense of unclean hands. Those states that permit a defense of unclean hands
very significantly in the requirements necessary to establish the defense.

*Id.* (quoting *Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 501 (S.D. Ill. 1999)).

Rather than accept Plaintiffs' argument, this Court should acknowledge that "there are
material differences in the various applicable states' unjust enrichment laws," thereby preventing
a manageable case. *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 2019 WL
1418292, at *4 (W.D. Mo. Mar. 21, 2019). For example, Idaho allows defendants to assert a
defense of unclean hands when a Plaintiff engages in "inequitable conduct" (*Dennett v. Kuenzli*,
936 P.2d 219, 225 (Id. 1997)), but Connecticut requires a showing of "willful misconduct"
(*Polverari v. Peatt*, 614 A.2d 484, 490 (Conn. App. 1992)). In New York, the courts do not
permit unjust enrichment claims "where it simply duplicates, or replaces, a conventional contract
or tort claim." *Cooper v. Anheuser-Busch, LLC,* 553 F.Supp.3d 83, 115 (S.D. N.Y. 2021)(finding
that where Plaintiffs' unjust enrichment claim was "premised on the same factual allegations as
those supporting Plaintiffs' other claims, and Plaintiffs have not alleged distinct damages with
respect to this claim," warranted dismissal of Plaintiffs' unjust enrichment claim as duplicative).

In considering only the named Plaintiffs' residential states,  the unjust enrichment laws
differ quite a bit.

**Maryland**: Under Maryland law, unjust enrichment applies even when the defendant has
come into the benefit "quite honestly" and has not done wrong. *Hill v. Cross Country
Settlements, LLC,* 936 A.2d 343, 351-52 (Md. Ct. App. 2007).

**Missouri**: Under Missouri law, unjust enrichment is unavailable if plaintiff has received
the benefit of its bargain, or where defendant has provided consideration for the benefit received.

*Howard v. Turnbull,* 316 S.W.3d 431, 438 (Mo. Ct. App. 2010)(affirming that plaintiff cannot recover for unjust enrichment when he received "precisely what he bargained for").

**Texas**: Under Texas law, the defendant must have "wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Villarreal v. Grant Geophysical. Inc.,* 136 S.W.3d 265, 270 (Tex. App. 2004). In fact, in Texas, unjust enrichment is not an independent cause of action but instead a measure of damages that places the aggrieved plaintiff in the position he occupied prior to dealing with the defendant. *Oxford v. Williams Cos.,* 137 F. Supp. 2d 756, 762 (E.D. Tex. 2001).

This is no doubt why several courts have found material differences between the states' unjust enrichment laws. *See generally, re Digitek Prods. Liab. Litig.*, 2010 WL 2102330, *8–9 (S.D. W.V. May 25, 2010) (conflict exists between states' unjust enrichment laws). And so, "when confronted by motions for class certification of unjust enrichment claims under the laws of the states at issue, courts have denied such motions, concluding that the need for individualized inquiries into purchasers' knowledge and motivations precluded a finding of predominance." *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 265 (D. D.C. 2019) (discussing cases).

In sum, the differences in the nationwide common law claims, highlighted above, are important to this Court's disposition because it demonstrates that a manageable nationwide class will never be reached in this instance. "The difficulties involved in comparing and contrasting all of the nuances of the laws of fifty-one jurisdictions is undeniably complicated," and "[s]everal courts have indicated the mere need to engage in such an analysis—and the exponential increase in the potential grounds for error—demonstrates a class action is inappropriate." *In re Bisphenol-*

*A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, 276 F.R.D. 336, 341 (W.D. Mo. 2011) (citations omitted).

Numerous courts have recognized material state laws vary between these claims, and have dismissed or stricken nationwide class claims as unmanageable on that basis. *See also, Camey v. Force Factor, LLC,* 2016 WL 10998440, *7-8 (D. Mass. May 16, 2016) (granting motion to strike nationwide warranty and unjust enrichment claims), Thus, because Plaintiffs' nationwide class claims are unmanageable as a matter of law, they "may be properly dismissed by granting a Rule 12(b)(6) motion." *McCrary,* 687 F. 3d at 1059. The fact that the motion to dismiss comes before Plaintiffs' motion to certify, which they imply will be filed in the future, would not by itself make a decision to dismiss by this Court "reversibly premature." *Pilgrim,* 660 F.3d at 949. In fact, "Rule 23(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time" in the litigation, and nothing in the rules says that the court must await a motion by plaintiffs." *Id.* Nothing prevents this Court from taking action on the nationwide claims now, rather than later, where the same result is unavoidable and there is no prohibition for the Court to do so.

## III.    Plaintiffs are not entitled to Injunctive Relief

First and foremost, Plaintiffs' statement that "Defendant continues to sell the Products labeled as 'Gluten Free', is wrong and misleading at best. (Pl's Opp'n, p. 12). As clearly stated in the Memo. in Support, Frickenschmidt recalled the Products in February 2022.  Any other foodstuffs currently produced and distributed by Frickenschmidt are not mislabeled, nor are they subject to this  or any lawsuit. Consequently, the violative "Products" Plaintiffs claim are still being sold to consumers are not on the market, and Plaintiffs' statement above should be ignored.

Plaintiffs' injunctive relief claims must be dismissed because they admittedly have stopped buying the Product since becoming aware that they contain gluten. Memo. in Support, pp. 21-24. Plaintiffs' admission that they "would not have purchased Defendant's Products (or paid a premium for them) had [they] known the truth concerning the presence of gluten in the Products" precludes their standing for injunctive relief. (FACAC ¶ 72, 91)

"An injunction is inherently prospective and cannot redress past injuries." *Frost v. Sioux City, Iowa,* 920 F.3d 1158, 1161 (8th Cir. 2019). Thus, to pursue injunctive relief, a plaintiff "'bears the burden of showing' . . . that she faces 'a real and immediate threat that she would again suffer similar injury in the future." *Id.* (citing *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009), *Mosby v. Ligon,* 418 F.3d 927, 933 (8th Cir. 2005)). Missouri federal courts have consistently held that a plaintiff who fails to allege a "future intention to purchase the products" in a mislabeling class action "lacks standing to obtain injunctive relief" because he or she cannot show "the threat of suffering a future injury caused by Defendant's labeling practices." *Johnson v. Atkins Nutritional, Inc.,* No. 16-04213, 2017 WL 6420199, at *12 (W.D. Mo. Mar. 29, 2017).

Plaintiffs point out that they "state that they would purchase the products in the future if the Products conformed to the representation made on the labels. Complaint ¶¶ 36-38." (Pl Opp'n, p. 12). But the question is not whether Plaintiffs have a desire to purchase the products; it "is whether the complaint adequately alleges that plaintiffs face a 'certainly impending' or 'substantial risk'" of harm. *In re SuperValu, Inc.*, 870 F.3d 763, 769 (8th Cir. 2017). Here, Plaintiffs only allege that they would buy the Product if the manufacturer takes action to "conform to the representation on the label", but it is clear that is not the case as Plaintiffs' whole lawsuit is about not wanting to buy items containing gluten. So, if the Products' label removed the words "gluten free" from it, then admittingly Plaintiffs would still not buy the Product

because it may contain some amount of gluten.  Plaintiffs' might buy argument "is not 'certainly

impeding.'", but rather only amounts to a "hypothetical injury" at best, which fails to support

Plaintiffs' request for injunctive relief. *Sanzone v. MercyHealth*, 954 F.3d 1031, 1046 (8th Cir.

2020) (citation omitted), *as corrected* (Apr. 9, 2020). There is simply no threatened or imminent

"substantial risk" of harm when, as here, Plaintiffs affirm they will not buy the Product again

unless it is changed.

Certainly, past purchasers of consumer products "who claim to be deceived by that

product's packaging. . . have, at most, alleged a past harm." *Berni v. Barilla S.p.A.*, 964 F.3d

141, 147 (2d Cir. 2020). Once a plaintiff knows the "product is deficient, he or she is . . .

unlikely to sustain future harm" because"[t]here is no risk of 'fool me twice,' so there is no basis

for an injunction." *Brodsky v. Aldi Inc.*, 2021 WL 4439304, *4 (N.D. Ill. Sept. 28, 2021); *accord

In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d

278, 293 (3d Cir. 2018) ("[W]e will not give cognizance to this sort of 'stop me before I buy

again' claim.").

## IV.     Plaintiffs' Punitive Damages should be Stricken

Frickenschmidt concurs with Plaintiffs that pursuant to *Ahmad v. Panera Bread Co.,*

2021 WL 5447000, at *6 (E.D. Mo. Nov. 16, 2021)  and Plaintiffs' request for punitive damages

should be stricken. (Pls' Opp'n. p. 13).

## V.     Motion to Strike Should be Granted

Rule 12(f) states, in pertinent part, that: "Upon motion made by a party . . .or upon the

court's own initiative at any time, the court may order stricken from any pleading any

insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  A district

court enjoys liberal discretion to strike pleadings under Rule 12(f) although it is a disfavored

measure. *Stanbury Law Firm, P.A. v. IRS,* 221 F.3d 1059, 1063 (8th Cir. 2000). Plaintiffs'

arguments against striking the certain paragraphs in the FACAC are unpersuasive. Although

Plaintiffs want to highlight the gluten allergy that some people suffer from, there is no facts

alleged that indicate any of the multi-state class plaintiffs, nationwide class, or any of the named

Plaintiffs suffer from a gluten allergy or was physically injured by ingestion of the Product. The

paragraphs to be stricken do not concern the precise issues at hand and are immaterial to

Plaintiffs' claim for relief.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Class Action Complaint must be

dismissed for lack of jurisdiction and for failing to state a claim upon which relief may be

granted.

*/s/ David C. Berwin*
David C. Berwin, #55046 MO
Evans & Dixon, L.L.C.
211 North Broadway, Suite 2500
St. Louis, Missouri  63102
(314) 552-4046
dberwin@evas-dixon.com
*Attorney for Defendant Frickenschmidt Foods, LLC*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served via the United States District Court
CM/ECF system to all counsel of record this 14th day of July, 2022.


/s/ David C. Berwin