UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| OLUWAKEMI ADEWOL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:22 CV 254 CDP |
| | ) | |
| FRICKENSCHMIDT FOODS LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

In this putative class action, named plaintiffs Oluwakemi Adewol, Keisha
Jackson, and Jemilat Suleiman allege that defendants Frickenschmidt Foods LLC
and Wicked Cutz LLC violated various state laws by mislabeling their Teriyaki
Beef Wicked Cutz Beef Stick as "gluten free."  Pending before the court are
several motions filed by both Plaintiffs and Defendants: Frickenschmidt's motion
to transfer, Frickenschmidt's motion to dismiss, Plaintiffs' motion for default
judgment against Wicked Cutz, Plaintiffs' motion for costs of service and
attorney's fees against Wicked Cutz, and Wicked Cutz's cross-motion to vacate the
clerk's entry of default.  For the reasons stated below, I will deny Frickenschmidt's
motion to transfer, Plaintiffs' motion for default judgment, and Plaintiffs' motion
for costs of service and attorney's fees, and I will grant Wicked Cutz's Cross-

motion to Vacate.  I will order the Plaintiffs to file a supplemental memorandum before addressing Frickenschmidt's motion to dismiss.

## Background

Defendants produced, marketed, and distributed Teriyaki Beef Wicked Cutz Beef Sticks throughout the United States.  In February 2022, Frickenschmidt recalled approximately 5,795 pounds of the beef sticks due to alleged misbranding: although the product contains and declares wheat as an ingredient, it incorrectly states "gluten free" on the label.  On February 28, just six days after the U.S. Department of Agriculture's Food Safety and Inspection Service (FSIS) announced the recall, Adewol filed a class action complaint against Frickenschmidt alleging she paid a substantial premium for the product because it was labeled as "gluten free" and that she would not have purchased it had she known that the labeling was false.  On March 12, 2022, Plaintiffs filed an amended complaint adding Wicked Cutz as a co-defendant and Jackson and Suleiman as named plaintiffs.

In their amended complaint, Plaintiffs assert claims on behalf of a Multi-State Consumer Class[1], Maryland Class, Missouri Class, and Nationwide Class. Each class is made up of purchasers of the beef sticks in each respective jurisdiction.  In Count 1, Adewol, a Maryland citizen, and Jackson, a Missouri

---

[1] The states covered by the Multi-State Consumer Class are California, Florida, Illinois, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, Pennsylvania, Oregon, and Washington.

citizen, claim on behalf of the Multi-State Class that Defendants violated the consumer protection statutes of several states.  In the alternative to Count 1, Counts 2 and 3 allege on behalf of the Maryland and Missouri Classes that Defendants violated Maryland and Missouri's consumer protection statutes.  Counts 4 through 6 allege breach of express warranty, breach of implied warranty, and unjust enrichment on behalf of the Nationwide Class.  Plaintiffs seek compensatory as well as punitive damages and injunctive relief.

On June 6, 2022, Frickenschmidt moved to transfer the case to the Western District of Missouri.  Essentially, Frickenschmidt argues that it would be onerous to travel and transport witnesses approximately 300 miles from its location in Lockwood, Missouri, to the Eastern District of Missouri courthouse in St. Louis. Frickenschmidt requests that the case be transferred to the Southern Division of the Western District of Missouri in Springfield—just fifty miles from Lockwood.

On the same day as it filed its motion to transfer, Frickenschmidt filed a "Motion to Dismiss First Amended Class Action Complaint and Strike Allegations or, In the Alternative, Motion for a More Definite Statement."  (ECF 41.)  In it, Frickenschmidt argues federal law preempts Plaintiffs' claims, Plaintiffs failed to specify the law supporting their nationwide claims, Plaintiffs failed to allege facts supporting various elements of their claims, and that Plaintiffs lack standing to pursue injunctive relief because Frickenschmidt has already recalled the

misbranded products.  If any of Plaintiffs' claims survive its motion to dismiss, Frickenschmidt requests that the Court order a more definite statement from Plaintiffs to allow Frickenschmidt to prepare a response.  It also requests that the Court strike immaterial and impertinent allegations in the pleadings.

Also pending before the Court are Plaintiffs' motions for entry of default judgment and costs of service and attorney's fees against Wicked Cutz and Wicked Cutz's cross-motion to vacate entry of default.  Wicked Cutz failed to respond to Plaintiffs' timely waiver request and summons within the time required by the federal rules, and no counsel entered an appearance for Wicked Cutz until after the Clerk of Court filed an Entry of Default on May 25, 2022.  On June 27, Wicked Cutz responded to Plaintiffs' motions and filed a cross-motion to vacate the Clerk's Entry of Default.  It explained that it failed to respond to Plaintiffs' complaint and motions within the time required by the federal rules because it mistakenly believed that counsel for Frickenschmidt also represented it.  Plaintiffs later consented to Wicked Cutz's motion to vacate entry of default.

## Discussion

### I.    Frickenschmidt's Motion to Transfer to the Western District of Missouri

Frickenschmidt moves to transfer this case to the Western District of Missouri under 28 U.S.C. § 1404(a).  Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Thus, if the party seeking transfer shows that the action could have been filed in the proposed transferee forum,[2] the court then considers the three general categories of factors set forth in § 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). A court is not limited to these enumerated factors, however, and must engage in a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* Federal courts generally give "considerable deference to a plaintiff's choice of forum, and thus the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted." *Id.*

Frickenschmidt claims that transfer to the Western District is warranted because it processed, packaged, and labeled the beef sticks in the Western District, and thus relevant evidence and witnesses will be located there. Litigating in the Eastern District would be more costly, it argues, because it would have to expend resources to file subpoenas for key employee-witnesses and transport them to depositions or hearings in St. Louis, approximately 300 miles away from its

---

[2] Plaintiffs do not dispute that this case could have originally been brought in the Western District of Missouri.

location in Lockwood, Missouri.  By contrast, the Western District of Missouri courthouse in Springfield is only 50 miles away from Lockwood.  Moreover, it claims that the Western District has a greater interest in this litigation because the products at issue were produced there; this case's only connection to the Eastern District is that one of the named plaintiffs resides and purchased a beef stick there. Plaintiffs respond that transferring to the Western District would merely shift the inconvenience onto the other parties, and the Court should defer to their choice of forum.

As an initial matter, I am skeptical of Plaintiffs' claim that transfer would "come at a significant cost to every other Party in this action." (ECF 48 at p. 9.) Plaintiffs cite only one such cost: the parties would have to travel through the Springfield airport rather than the St. Louis one.  (*Id.*)  And though, as Plaintiffs note, only Frickenschmidt is in the Western District, only one named plaintiff resides in the Eastern District.  Either way, all the other parties must travel to a district where they do not reside.

However, Frickenschmidt bears the burden of proving that transfer is warranted.  And I agree with Plaintiffs that the specter of inconvenience is insufficient to justify transfer at this stage of litigation.  I anticipate that much of the relevant evidence will be stored electronically.  Thus, Frickenschmidt's physical location in Lockwood will likely not present the substantial impediments

to discovery that Frickenschmidt claims. *Blume v. Int'l Servs., Inc.*, No. 4:12CV165DDN, 2012 WL 1957419, at *7 (E.D. Mo. May 31, 2012). ("The location of relevant documents is a non-issue in today's world because copy machines, electronic discovery, and emails make it much easier to obtain documents at a distance." (quoting *Marcus v. Am. Contract Bridge League*, 562 F. Supp. 2d 360, 366 (D. Conn. 2008))).

Frickenschmidt also does not identify any of the key witnesses it claims would be inconvenienced by litigating in the Eastern District. "Generally, a party seeking to transfer an action for convenience of the witnesses must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover." *Weimer v. Gen. Motors LLC*, No. 4:16-cv-02023-AGF, 2017 WL 3458370, at *5 (E.D. Mo. Aug. 11, 2017) (quoting *Seneca Cos. v. Becker*, 134 F. Supp. 3d 1148, 1157 (S.D. Iowa 2015)). Then, the Court considers "the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony." *Id.* (quoting *Terra Int'l*, 119 F.3d at 696). Here, Frickenschmidt merely provides an affidavit from Mr. Frickenschmidt explaining that individuals involved in the processing, packaging, and labeling of the Products work in Lockwood, Missouri.

Moreover, the witnesses Frickenschmidt claims will be inconvenienced are its employees. (*See* ECF 40 at p. 4.) But "[t]he focus is on non-party witnesses,

since 'it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum.' " *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 955 (D. Minn. 2014) (quoting *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1138 (D. Minn. 2009)). Thus, claims that a witness will be inconvenienced are "given less weight when potential witnesses are employees under Defendant's control." *Saxerud v. T-H Pro. & Med. Collections Ltd.*, 482 F. Supp. 3d 900, 902 (E.D. Mo. 2020). And Frickenschmidt does not identify any non-party witnesses whose testimony may be required.[3] The convenience of Frickenschmidt's employees is not immaterial but, at this stage of the litigation, largely conjectural.

The interests of justice do not favor transfer either. Frickenschmidt correctly notes that the considerable deference to a plaintiff's choice of forum "is based on an assumption that the plaintiff's choice will be a convenient one." *In re Apple*, 602 F.3d 909, 913 (8th Cir. 2010). This court has found that assumption less persuasive in the class action context. *Silverberg v. H&R Bloc, Inc.*, No. 4:06CV00519 ERW, 2006 WL 1314005, at *2 n.6 (E.D. Mo. May 12, 2006) ("[M]any courts give a plaintiff's choice of forum less deference in the context of a

---

[3] Such witnesses also enjoy protection under the Federal Rules of Civil Procedure. They may only be required to attend a trial, hearing, or deposition under the circumstances in Federal Rule of Civil Procedure 45(c)(1), and the party serving a subpoena must take reasonable steps to avoid imposing undue burden on them. *See* Fed. R. Civ. P. 45(d)(1).

class action suit.").  But *Silverberg* dealt with a class action in which the class

representative did not reside in the forum.  *Id.*  In *Moore v. Compass Group USA,*

*Inc.*, the court distinguished *Silverberg* from cases in which the class

representatives lived in the forum and took relevant actions there.  No.

4:18CV1962 RLW, 2019 WL 4723077, at *3-4 (E.D. Mo. Sept. 26, 2019) (no

transfer in nationwide class action when one named plaintiff "lives in St. Louis,

both [named plaintiffs] work in St. Louis, and the particular . . . vending machine

from which they allegedly made purchases is located in St. Louis.").  Here, one of

the named plaintiffs, Jackson, resides in the Eastern District and purchased the

product here.[4]  Thus, at least some of the operative facts occurred in this forum,

and Jackson was allegedly injured in the forum.  *See Lax v. Toyota Motor Corp.*,

65 F. Supp. 3d 772, 778 (N.D. Cal. 2014) (one of seven named plaintiffs' relevant

contacts in the forum and defendants' sales in the forum "give weight to plaintiff's

choice of forum, despite the fact that this is a class action.").  While Jackson is

only one of three named plaintiffs, her choice of forum is still entitled to some

deference.

Frickenschmidt has not clearly shown that the balance of interests weighs in

favor of disturbing Plaintiffs' choice, and I will deny the motion to transfer.

---

[4] Although unstated in their amended complaint, in subsequent briefing, Plaintiffs have clarified that Jackson resides in St. Louis.

## II.     Motion to Dismiss, to Strike Allegations, or for a More Definite Statement

Frickenschmidt next moves to dismiss and strike allegations, or, in the alternative, for a more definite statement.  In Frickenschmidt's memorandum in support of its motion, it argued that Plaintiffs' claims were preempted by the Federal Food, Drug, and Cosmetic Act, the Nutrition Labeling and Education Act, and the FDA's extensive regulation of "gluten-free" labeling.  But after Plaintiffs responded that the FDA does not regulate Defendants' Product, Frickenschmidt argued that Plaintiffs' claims are preempted by the Federal Meat Inspection Act. Because Frickenschmidt raised this argument for the first time in its reply, Plaintiffs have not had the opportunity to respond to it.  I will therefore order Plaintiffs to file a supplemental memorandum addressing Frickenschmidt's arguments relating to preemption before ruling on Frickenschmidt's motion.

## III.    Motions For Default Judgment and Costs of Service and Attorney's Fees

As explained above, Plaintiffs moved for default judgment and costs of service and attorney's fees against Wicked Cutz, but later consented to Wicked Cutz's cross-motion to vacate and withdrew their motion for default judgment.  I will therefore vacate the Clerk's Entry of Default against Wicked Cutz entered on May 25, 2022.  In lieu of filing its own motion to dismiss, Wicked Cutz is joining Frickenschmidt's Motion to Dismiss, and has agreed to file its Answer to the

Amended Complaint no later than fourteen days after the Court's ruling on the Motion to Dismiss.

Plaintiffs have not withdrawn their motion for costs of service and attorney's fees, however, and that motion remains pending. Rule 4(d)(2) of the Federal Rules of Civil Procedure provides that:

> If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant: (A) the expenses later incurred in making the service; and (B) the reasonable expenses, including attorney fees, of any motion required to collect those service expenses.

Fed. R. Civ. P. 4(d)(2). Because Wicked Cutz failed to return the waiver mailed to it on March 14, 2022, Plaintiffs request $85.00 in service costs and $1,312.50 in attorney's fees incurred in the 1.5 hours expended in preparing and filing its motion and memorandum to recover its service costs.

Wicked Cutz argues that good cause excuses its failure to return the waiver request because it mistakenly believed that Frickenschmidt's counsel, Mr. Berwin, was also representing it. Shortly after Wicked Cutz learned that it was a defendant in this action, Thomas Frickenschmidt, co-owner of Defendant Frickenschmidt, informed Wicked Cutz that Mr. Berwin would represent Wicked Cutz as well. Mr. Frickenschmidt unintentionally relayed incorrect information, and Wicked Cutz only became aware that Mr. Berwin was not representing it after the Clerk's Entry of Default.

- 11 -

Wicked Cutz also argues that defects in Plaintiffs' waiver request excuse its failure.  It claims that Plaintiffs did not provide a notice giving it "a reasonable time of at least 30 days after the request was sent . . . to return the waiver" as required by Rule 4(d)(1)(F); did not address the request "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" as required by Rule 4(d)(1)(A)(ii); and did not accompany the notice with "a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form" as required by Rule 4(d)(1)(C).

Plaintiffs appear to concede that they failed to strictly comply with Rules 4(d)(1)(A) and (F).  (*See* ECF 63 at p. 12 ("Plaintiffs complied with all of the requirements except for the minor variations concerning Sections (A) and (F).").)  But they note that some courts have found that a "technical error in the waiver process [does] not prevent the award of costs and that substantial compliance is sufficient."  *Muntzing by & through Skok v. Muntzing*, No. 2:14-CV-66, 2015 WL 13450658, at *2 (N.D.W. Va. Feb. 17, 2015) (collecting cases).  They argue that they substantially complied with Rule 4 and, because Wicked Cutz admits that it failed to return the waiver because of miscommunications with its co-defendant, Wicked Cutz could not have been prejudiced by any defects.

I am not sure that Plaintiffs substantially complied with Rule 4; at least one court has found that failure to inform a defendant of a due date to return the waiver, as required by 4(d)(1)(F), is "more than a technical violation." *Id.* However, I need not decide whether Plaintiffs substantially complied with Rule 4 because the miscommunication about Wicked Cutz's counsel constitutes good cause. Although Plaintiffs did not cause the miscommunication, Wicked Cutz's belief that Frickenschmidt's counsel would represent it was reasonable. This court has found that such miscommunications can constitute good cause under similar circumstances. *See Davis v. White*, No. 4:10CV1429MLM, 2010 WL 4279122, at *1 (E.D. Mo. Oct. 22, 2010) (finding good cause when defendant believed co-defendant "would waive service on his behalf when it agreed to waive service on it"). Plaintiffs note that the co-defendants in *Davis* were in an employee-employer relationship, but the court did not specifically base its reasoning on that relationship.

Because Wicked Cutz had good cause for failing to sign and return the waiver requested by Plaintiffs, I will deny Plaintiffs' motion for costs of service and attorney's fees.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Frickenschmidt's Motion to Transfer [39] is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs shall file a supplemental memorandum addressing Defendant Frickenschmidt's argument relating to preemption no later than **September 26, 2022**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Default Judgment [34] is **DENIED**, and Wicked Cutz's Cross-motion to Vacate Clerk's Entry of Default [54] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Costs of Service and Attorney's Fees [36] is **DENIED**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of September, 2022.